154 So.2d 36

THOMPSON, WEINMAN & COMPANY et al.

v.

BOARD OF ADJUSTMENT OF CITY OF SYLACAUGA, Alabama, et al.

7 Div. 542.

Supreme Court of Alabama.

May 30, 1963.

Stringer & Montgomery, Talladega, and Robt. J. Teel, Rockford, for appellants.

Lyndol Bolton, Sylacauga, for appellees.

PER CURIAM.

The question for decision is whether a city zoning ordinance providing for a one-family residence district, should be varied to permit the operation of a marble quarry within the district.

On August 23, 1960, E. I. Dison and Thompson, Weinman & Company filed application for an adjustment or variance of Article 2, §§ 14 and 21 of the Zoning Ordinance of Sylacauga, which became effective on December 4, 1958, as the same applied to the SW ¼ of the NW ¼ of Section 31, Township 21 South, Range 4 East, Talladega County, Alabama. On September 16, 1960, after due advertisement, the Board of Adjustment of the City of Sylacauga denied the application for a variance. On September 30, 1960, E. L. Dison and Thompson, Weinman & Company gave notice of appeal to the Circuit Court of Talladega County, Alabama. On January 19, 1961, Rebecca Buckner, et al., filed a request for leave to file a petition to intervene in the cause, which was granted, and a petition to intervene was filed on the said date. A motion to strike and demurrers to the petition to intervene were overruled. These rulings are not assigned as error. Appellants then filed answer to petition to intervene. . . .

After the evidence was introduced, which the court heard orally, the court denied the application for a variance and affirmed the decision of the Board of Adjustment. This appeal followed.

We shall not undertake to set out all the evidence, but shall try to state sufficient facts in the evidence to make the opinion understandable.

E. I. Dison is the owner of forty acres of land lying within the corporate limits

of the City of Sylacauga and described as the SW ¼ of the NW ¼ of Section 31, Township 21 South, Range 4 East, Talladega County, Alabama. The forty acres was subject to executory lease and option to purchase, dated April 28, 1959 in favor of Thompson, Weinman & Company. Five hundred dollars ($500.00) was paid to Dison by Thompson, Weinman & Company for the option. In the event of the exercise of the option on thirty-two acres thereof, a total of $32,000.00 would be paid by Thompson, Weinman & Company to E. I. Dison, and E. I. Dison would have the right, in the event of the exercise of such option, to require Thompson, Weinman & Company to purchase the remaining eight acres for $25,000.00.

The forty acres were zoned R–1 by the Zoning Ordinance of the City of Sylacauga, which became effective on December 4, 1958. The forty had not been previously zoned and it was not in the city limits at the time of the adoption of the city's earlier Zoning Ordinance. An R–1 district under the Zoning Ordinance is a one-family residence district.

G. W. Beavers testified that he was Vice President of Thompson, Weinman & Company and negotiated the option for lease for the company and was unaware of the fact that the forty was subject to a zoning ordinance. Upon being advised by the Mayor of Sylacauga that nothing further was needed for the proposed operation, Thompson, Weinman & Company then commenced drilling operations on the forty and had expended in excess of $3,000.00 on such operations plus the cost of the option when they first learned of the existence of the Zoning Ordinance. Thompson, Weinman & Company continued to drill the forty at a cost in excess of $26,000.00. The drilling indicated the presence of a large amount of usable marble worth a large amount of money.

There was conflicting evidence as to the condition of the property and especially as it lay with reference to adjacent owners. There was testimony tending to show that the forty lay in a basin in which water stood and was filled with sink holes, some of which had fallen in and some of which had not; that it was surrounded by lands on which the mineral interests are outstanding and owned by other marble companies. The forty lies within half a mile of one operating quarry and within 3,000 feet of another operating quarry, and within 3,000 feet of a fertilizer factory. There was testimony tending to show that Thompson, Weinman & Company had drilled the Dison land in 1947 under a lease option agreement; that the 1947 option was not exercised because the quantity of marble could not be proved under the drilling methods in use at that time. A quarrying operation could be carried on on the Dison forty without danger to life and with safety to persons and property in the adjoining area.

Mrs. E. I. Dison, witness for the appellants, testified that the forty acres in question lay west of the Coaling Road, north of the Quarry Road and south of the Fayetteville Road and that the nearest operating quarry was ¼ mile away; that she had lived on the forty for ten years and was unaware of the existence of the Zoning Ordinance at the time of the option. She also testified to the presence of sink holes on the property.

There was testimony by W. D. Whetstone, who was called by the intervenors, which was in effect that he was in the real estate and motel business in Sylacauga and that quarry operations similar to that carried on in the other quarries west of the city limits of Sylacauga would diminish the market value of the houses on the Coaling Road; that he is familiar with the Dison land and especially that part adjacent to the Coaling Road; that it would be very expensive to put it to profitable use for residential purposes. He and other witnesses who lived in the neighborhood testified that they had heard blasts from the vicinity of Thompson, Weinman & Company's plant, but did not know whether they were from the quarry or not; that if the quarry operations were moved half a mile

closer to him, in his opinion his house would not be as desirable for a residence.

Other witnesses testified that they were familiar with the real estate involved and owned property in the neighborhood adjacent to the property sought to be varied under the Zoning Ordinance; that a marble quarry on the property owned by the Disons would lessen the value of their property. Other witnesses testified that they were familiar in a general way with the property across the Coaling Road from the Dison land and that it has on it moderately priced houses of a residential nature; that a quarry operated on the property involved in the suit would make their property less desireable and less valuable.

■ There is no doubt that the Board of Adjustment in this case has authority to determine that the Zoning Ordinance should not be applied literally and to make proper adjustment to prevent unnecessary hardship even to the extent of authorizing non-conforming uses. Nelson v. Donaldson, 255 Ala. 76, 50 So.2d 244; Board of Zoning Adjustment for City of Lanett v. Boykin, 265 Ala. 504, 92 So.2d 906.

■■ It is also true that the power of the Board of Adjustment is not restricted to a grant of a variance with slight modifications (Nelson v. Donaldson, supra) and that where a strict application of the Zoning Ordinance operates to create an unnecessary hardship, the ordinance is oppressive, arbitrary and capricious and a variance should be granted. Nelson v. Donaldson, supra.

■■ It will be noted that the money spent by the appellants was largely spent after they became aware of the Zoning Ordinance. It is settled by authority that self-inflicted or self-created hardship may not be the basis for a variance or for a claim thereof. Josephson v. Autrey, (Fla.), 96 So.2d 784; Sherwood Realty Co. v. Feriola, 193 Misc. 194, 82 N.Y.S.2d 505.

We are mindful of the fact that the testimony in the present case was taken orally before the trial judge and since we do not think that his finding is plainly and palpably erroneous, we see no reason to differ with the conclusion reached by him. Hampton v. Stewart, 240 Ala. 2, 194 So. 509.

The result is that the judgment of the lower court is due to be affirmed.

The foregoing opinion was prepared by Davis F. Stakely, Supernumerary Supreme Court Justice, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, MERRILL and HARWOOD, JJ., concur.