THOMPSON, Presiding Judge.
Janet M. Watson appealed to the Board of Zoning Adjustment of the City of Huntsville (“the Board”) challenging a decision of the zoning administrator of the City of Huntsville (“the City”) that denied her request for a variance to allow a parcel of property she owned (“the parcel”) to be deemed a nonconforming lot so that a house could be constructed on the parcel. On May 21, 2014, the Board upheld the zoning administrator’s denial of Watson’s request for a variance, and Watson appealed the Board’s decision to the Madison Circuit Court (“the trial court”). The trial court conducted an ore tenus hearing, and on September 15, 2015, it entered a judgment reversing the decision of the Board and ordering that the variance be granted. The Board filed a postjudgment motion, which was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P. The Board timely appealed.
Before the Board and the trial court, Watson sought an area variance based on her contention that failing to allow her a variance so that a house could be built on the parcel, which undisputedly is too small a lot on which to construct a house under the area specifications of the applicable zoning requirements, would cause her an “unnecessary hardship.” See Ferraro v. Board of Zoning Adjustment of Birmingham, 970 So.2d 299, 307 (Ala.Civ.App.2007) (explaining the differences between a use variance and an area variance). A board of adjustment, among other things, may grant a variance that would “not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the [zoning] ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.” § 11—52—80(d)(3), Ala.Code 1975.
In its September 15, 2015, judgment, the trial court ordered that Watson’s request for a variance be granted without making any findings of fact. When a trial court fails to make factual findings, this court will assume that it made those findings necessary to support its judgment. City of Prattville v. Post, 831 So.2d 622, 628 (Ala.Civ.App.2002). Accordingly, we conclude that, in granting Watson the relief she requested, the trial court implicitly found that the denial of the variance would cause Watson an unnecessary hardship.
“ ‘Generally, where the trial court receives ore tenus evidence, the trial court’s judgment based on that evidence is entitled to a presumption of correctness and will not be reversed on appeal absent a showing that it is plainly and palpably wrong. Alverson v. Trans-Cycle Indus., Inc., 726 So.2d 670 (Ala.Civ. App.1998). However, that presumption of correctness applies to the trial court’s findings of fact, not to its conclusions of law. City of Russellville Zoning Bd. of Adjustment v. Vernon, 842 So.2d 627 (Ala.2002). Further, the presumption favoring the judgment of the trial court has no application when the trial court is shown to have improperly applied the law to the facts. Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415 (Ala.1994).’ ”
Ferraro v. Board of Zoning Adjustment of Birmingham, 970 So.2d at 302 (quoting *1077 Town of Orrville v. S & H Mobile Homes, Inc., 872 So.2d 856, 858 (Ala.Civ.App. 2003)).
The transcript of the ore tenus hearing before the trial court reveals the following pertinent facts. Watson testified that she is a retired real-estate developer who had developed two or three subdivisions before she purchased a large tract of land, which included the parcel in 1988. Watson testified that the large tract of land was zoned by the City as “Rl-A,” a designation permitting residential use. Lots in an area zoned Rl-A are required by the City’s zoning ordinances to have an area of 12,-000 square feet and be at least 75 feet in width.
Watson said that she hired an engineer to design the division of the large tract of land into lots for a residential subdivision known as “Huntington Place, Second Addition” (“the subdivision”). Watson agreed that she hired the engineer to fashion a division of the large tract that would maximize her revenue from selling the subdivided lots. The City’s planning commission approved the subdivision in 2002. Watson testified that she sold the lots in the subdivision and that others constructed the houses placed on those lots. The parcel, however, was not included in the plat for the subdivision.
Before the trial court, Watson testified that the parcel was not included in the subdivision because the size of the parcel was too small, under the applicable zoning ordinance, to allow the construction of a house on it. The parcel has a curb, and, therefore, it looks like the other lots on Heatherwood Drive. The parcel is located at the end of Heatherwood Drive, which does not end in a cul-de-sac but, rather, is “stubbed out.” Watson explained that a street is “stubbed out,” or simply ended, when it is anticipated that further development might occur and that the road would, at some time in the future, be extended to accommodate the anticipated further development. The parcel abuts a large tract of land' with only three or four residences on it, referred to by the parties as “the Fanning property.” The Fanning property is divided among members of the Fanning family, pursuant to a plan referred to as a “family subdivision,” into four large lots.
In November 2013, Blake Cantrell, who testified that he works in the real-estate business, approached Watson to inquire about purchasing the parcel. Cantrell entered into a contract to purchase the parcel; that contract was contingent on Watson’s obtaining from the City a variance that would allow Watson to construct a house on the parcel. Thereafter, Watson requested the variance, but the city’s zoning administrator and the Board denied that request.
Watson testified that the parcel has no reasonable use under the Rl-A zoning designation, and, therefore, she stated, the failure to grant her a variance for the parcel caused her an undue hardship. Watson pointed out that, because the parcel is less than 75 feet in width, a house or other residential building cannot be constructed on it under the applicable zoning ordinance.
Watson also testified that, when she created the subdivision, she had anticipated that the Fanning property would be developed in the future and that, assuming that that anticipated future development would occur, she had hoped to attempt to purchase additional property adjacent to the parcel so that the parcel could be developed under the applicable zoning ordinances. Watson testified that her expectation of further development was reasonable, as evidenced, she says, by the City’s agreeing to allow Heather- *1078 wood Drive to be “stubbed out” rather than ended in a cul-de-sac.
Watson testified that, after Cantrell sought to purchase the parcel, she had attempted to buy additional land from adjacent landowners to enlarge the parcel and make it compliant with the width and area requirements of the applicable zoning ordinance. However, Watson testified, the adjacent landowners had refused to sell her any portion of their properties.
It is undisputed that the Panning property is zoned as Rl-A, as is the parcel and the .other lots containing residences on Heatherwood Drive. Watson testified before the trial court that she did not believe that Heatherwood Drive would be further developed in the future. Therefore, Watson stated, she did not believe that she would be able to purchase additional property to enlarge the parcel so that it would be compliant with the width and area requirements of the applicable zoning ordinance. Watson explained that, to extend Heatherwood Drive into the Fanning property, three different landowners would have to agree to sell at least a portion of their property. Watson testified that she believed that it was unlikely she could obtain the agreement of all the necessary landowners, so, she believed, it was not likely that the Fanning property would be developed. We note that the Board presented evidence indicating that Watson purchased the large tract of land that she later subdivided, and of which the parcel was a part, from three different péoplé, all of whom were apparently within the Fanning family.
Watson testified that she has to pay property taxes on the parcel and maintain the parcel, and, she said, since 2018, she has received multiple notices from the City indicating that, by, failing to properly maintain the vegetation on the parcel, she was violating a local weed ordinance. On one occasion, when Watson failed to have the parcel maintained, the .City’s workers mowed the parcel and billed Watson $197 for that maintenance. Watson testified that the Fanning property was overgrown and that .she believed that the weed ordinance was selectively enforced by the City, However, Jim McGuffey, the manager of planning services for the City, testified that the weed ordinance was enforced based on complaints from nearby property owners. ■ ■
Several property owners who live near the parcel testified that they believed that the house ■ Cantrell proposed to build on the parcel if a variance was granted would be out of character for the neighborhood bécause of - its narrowness and height.[1] The neighbors believed that the construction of Cantrell’s proposed residence would decrease their property values. Watson disputed the neighbors’ contentions that the size and shape of the house was inconsistent with the neighborhood because, she noted, townhouses are located at the start of Heatherwood Drive, which is only two to three blocks in length.
The evidence indicates that the lots on Heatherwood Drive, as designed by Watson in her creation of the subdivision, are all between 95 and 105 feet in width. McGuffey testified that nothing in the City’s zoning ordinances had prevented Watson, when she was creating the subdivision, from creating a division of property that would not have resulted in the parcel being too small to contain a house; the subdivision could have been divided into a greater number of smaller lots, or each of *1079 the lots created could have been larger. On cross-examination, Watson admitted that the large tract of land could have been divided to create the same number of slightly larger lots and that, as an alternative, she could have made the parcel sufficiently large to comply -with the Rl-A zoning requirements by making the other nearby lots in the subdivision slightly smaller. However, Watson stated that she elected to leave the parcel out of the subdivision because she thought she could make a profit from the parcel at some point in the future.
On appeal, the Board argués that the trial court erred in reversing the Board’s decision and ordering that Watson’s variance request be granted. Watson sought the variance based on her claim of an “unnecessary hardship.” The Board argues on appeal that the evidence does not support a conclusion that Watson suffered an “unnecessary hardship,” as that term is defined under Alabama law, that would warrant the granting of the requested variance. “We have repeatedly recognized that variances should be granted sparingly, and only under unusual and exceptional circumstances where the literal enforcement of the ordinance would result in unnecessary hardship.” Board of Zoning Adjustment for Fultondale v. Summers, 814 So.2d 851, 855 (Ala.2001).
“[T]he primary question in variance cases is whether, due to special conditions, a literal enforcement of a zoning ordinance will result in an unnecessary hardship. Board of Zoning Adjustment for Fultondale v. Summers, 814 So.2d [851,] 855 [(Ala.2001)]. ‘An “unnecessary hardship” sufficient to support a variance exists where a zoning ordinance, when applied to the property in the setting of its environment, is “so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property.” ’ Ex parte Chapman, 485 So.2d 1161, 1162 (Ala.1986) (quoting McQuillin, Municipal Corporations § 25.167 (3d ed.1983)). Furthermore, “‘the unnecessary hardship which will suffice for the granting of a variance must relate to the land rather than to the owner himself. Mere personal hardship does not constitute sufficient ground for the granting of a variance.” ’ Ex parte Chapman, 485 So.2d at 1164 (quoting 82 Am.Jur.2d, Zoning & Planning § 275 (1976)). Finally, a ‘“self-inflicted or self-created hardship may not be the basis for a variance or for a claim thereof.”’ Ex parte Chapman, 485 So.2d at 1163 (quoting Thompson, Weinman & Co. v. Board of Adjustment, 275 Ala. 278, 281, 154 So.2d 36, 39 (1963)).”
Ferraro v. Board of Zoning Adjustment of Birmingham, 970 So.2d at 307.
The Board contends that the hardship of which Watson complains in seeking the variance is self-created and that, therefore, it may not serve as the basis for granting a variance. Ferraro, supra. See also Board of Zoning Adjustment for Fultondale v. Summers, 814 So.2d at 856 (“When the owner, by his own conduct, creates the exact hardship he alleges exists, he will not be permitted to take advantage of it.”); and Board of Adjustment of Prichard v. Creel, 500 So.2d 1147, 1148-49 (Ala.Civ.App.1986) (“[T]here can be no basis for claiming that a variance should be granted if the hardship is self-created or self-inflicted.”).
The evidence in the record is undisputed that, in creating the subdivision, Watson elected to create the parcel so that, under the applicable zoning ordinance, it would be too small to contain a house and to exclude the parcel from the land platted in the subdivision. Watson admitted that she could have included the land composing *1080 the parcel to create larger subdivision lots or more lots of a smaller size. However, Watson stated that she elected not to do so in the hope that she could make money from the parcel if adjacent property were developed in the future. Unfortunately, the land abutting the parcel has not been developed, and Watson has been left with nonconforming property for far longer than she had anticipated.
Watson points out that if she sold the parcel, any subsequent owner would have the same difficulties of which she complains, i.e., being unable to construct a house or other residential building on the parcel and incurring the expenses of paying property taxes and maintaining the parcel. Watson contends, therefore, that the “unnecessary hardship” runs with the land. We note, however, that there is no evidence indicating that the land abutting the parcel will not, at some future date, be developed, thereby creating the possibility of alleviating the problem causing the parcel not to comply with the Rl-A zoning requirements.
However, this court has discovered no authority for the proposition that a property owner can create a hardship that would run with the land and then seek a variance under a claim of an undue hardship. Rather, the applicable caselaw establishes that a self-inflicted hardship cannot serve as a basis for a variance. Ferraro, supra; Board of Zoning Adjustment for Fultondale v. Summers, supra; and Board of Adjustment of Prichard v. Creel, supra. Watson’s arguments and evidence focused on the condition of the parcel. However, the defense asserted by the Board that the claimed unnecessary hardship was self-inflicted focused on Watson’s conduct, and that defense, if supported by the evidence, would serve as a complete bar to a claim of an unnecessary hardship. Vernon’s Tri-State Pawn, Inc. v. City of Mobile Bd. of Adjustment, 571 So.2d 309, 311 (Ala.Civ. App.1990).
We conclude that the evidence is clear that Watson’s own choices created the hardship of which she complained in seeking the variance.
“[A] ‘self-inflicted or self-created hard ship may not be the basis for a variance or for a claim thereof.’ Thompson, Weinman & Co. v. Board of Adjustment, 275 Ala. 278, 281, 154 So.2d 36, 39 (1963); Martin [v. Board of Adjustment, 464 So.2d 123 (Ala.Civ.App.1985) ]. When the owner himself by his own conduct creates the exact hardship which he alleges to exist, he certainly should not be permitted to take advantage of it.’ Josephson v. Autrey, 96 So.2d 784, 789 (Fla.1957), cited with approval in Thompson, Weinman & Co., supra.”
Ex parte Chapman, 485 So.2d 1161, 1163 (Ala.1986). Based on well settled law, we hold that the trial court erred in applying the applicable law to the facts, and, therefore, we reverse the judgment.
We note that Watson argues in her brief submitted to this court that the Board failed to address in its brief to this court all of the bases the trial court considered in deciding to grant the variance. When a trial court does not specify the basis of its judgment, an appellant’s failure to address an issue on which the trial court might have relied results in an affirmance, because the appellate courts will not assume error on the part of the trial court. Soutullo v. Mobile Cty., 58 So.3d 733, 739 (Ala.2010) (“If an appellant defaults on his or her duty to show error by failing to argue in an opening brief an unstated ground that was placed in issue below, then, a fortiori, a challenge to the judgment [on that unstated ground] is waived.... ”). In this case, however, Watson sought the variance on only one legal *1081 theory, which was her claim for a variance based on an alleged unnecessary hardship. Watson argues that the trial court could have relied on other legal bases. The division of the adjacent Fanning property into a family subdivision, the enforcement of the weed ordinance, and the assessment of taxes on the parcel were the “grounds” identified by Watson as purported alternate bases for the trial court’s judgment.[2] However, the other “grounds” upon which Watson contends the trial court relied are actually factors pertaining to whether there was an unnecessary hardship.
“‘“No one factor determines the question of what is practical difficulty or unnecessary hardship, but all relevant factors, when taken together, must indicate that the plight of the premises in question is unique in that they cannot be put reasonably to a conforming use because of the limitations imposed upon them by reason of their classification in a specified zone.” ’
“City of Mobile v. Sorrell, 271 Ala. 468, 471, 124 So.2d 463, 465 (1960), quoting Brackett v. Board of Appeal, 311 Mass. 52, 39 N.E.2d 956 (1942).”
Ex parte Chapman, 485 So.2d at 1162. Accordingly, we reject Watson’s argument that the Board failed to address alternate bases upon which the trial court could have reached its judgment.
REVERSED AND REMANDED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. There is no dispute that the residence that Cantrell proposed to place on the parcel would meet all applicable setback requirements imposed by the City’s zoning ordinances.

. Watson did not explain why the division of the Fanning property into a family subdivision was relevant to the issue of whether she had suffered an unnecessary hardship justifying the requested variance.